**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION v ROBBINS et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5931. Decided May 26, 1939

Lorbach & Garver, Cincinnati, for appellee.

Leonard H. Freiberg, Cincinnati, for appellant, The A. M. Lewin Lumber Co.

### OPINION

By HAMILTON, J.

Heard on appeal on questions of law and fact.

The controversy here for decision concerns the priority of liens on real estate.

The case is submitted on a stipulation of facts and additional testimony taken at the hearing in this Court.

The First Federal Savings & Loan Association of Cincinnati, plaintiff, appellee, filed an action for foreclosure of a mortgage on the real estate of the defendant, Nellie E. Robbins, making The A. M. Lewin Lumber Company, a party defendant.

The plaintiff's action was based on a claimed construction mortgage, executed by the defendant, Nellie E. Robbins and her husband, for the erection of a certain building on certain real estate described in said mortgage. It claimed its construction mortgage to be a first and best lien prior to all other liens.

The A. M. Lewin Lumber Company claims a mechanic's lien for materials furnished and delivered on the premises described in the mortgage, and claims that its lien has priority over the mortgage of The First Federal Savings & Loan Associotion.

The property was sold at foreclosure sale for the sum of $4666.67, and was purchased by the appellee.

The rights of the parties are transferred to this fund, the proceeds of the sale.

Two questions are presented for decision: The first is, whether the mechanic's lien of The A. M. Lewin Lumber Company is a valid lien. ond question is, if the mechanic's lien is valid, does it have priority over the mortgage of the First Federal Savings & Loan Association of Cincinnati?

We are content to consider the mechanic's lien of the A. M. Lewin Lumber Company is a valid lien.

Counsel for the appellant, The A. M. Lewin Lumber Company, challenge the validity and priority of the construction mortgage of the First Federal Savings & Loan Association, first, on the ground that it fails to comply with the form in the mortgage notice required by the statute for construction mortgages.

**Sec. 8321-1 GC,** provides that:

"* * * the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in such improvement in the manner contemplated in §§**8310 and 8311 GC**, or to pay off prior encumbrances or both, and which mortgage contains therein the correct name and address of said mortgagee, together with a covenant between the mortgagor and the mortgagee authorizing and empowering the mortgagee to do all things in this act provided by said mortgagee to be done, shall be prior to all mechanic's, material men's and similar liens." * * *

The language of the mortgage is:

"This mortgage is given to acquire the premises herein described and/or to pay prior encumbrances thereon, and

the grantor hereby consents and agrees with the grantee, whose correct address is 3301 Warsaw Avenue, Cincinnati, Ohio, that the funds secured by this mortgage may be paid out by the grantee as provided by §8321-1 GC."

One of the objects of this section is to provide notice to the world that the mortgage is a construction mortgage, and give notice to those who might furnish material and labor as to the manner in which funds might to paid by the mortgagee. This is sufficient to put all persons on notice who might furnish labor and materials for the construction of the improvement. Moreover, it appears that The A. M. Lewin Lumber Company had knowledge of the construction mortgage, in that it filed its certificate and obtained a $300 payment from the appellee, the mortgagee. We are, therefore, of the opinion that there was sufficient compliance with the statute as to the form of the notice contained in the mortgage.

The suggestion by counsel for appellant, The A. M. Lewin Lumber Company, that the language of the statute be incorporated in the notice is not tenable. It is not so provided in the section, and, certainly, with the actual knowledge of the existence of the construction mortgage, the appellant was not injured by the omission of this language in the notice.

The remaining question is the priority between the mechanic's lien and the mortgage, §8321-1 GC, providing for construction mortgages, states in part:

"* * * the lien of a mortgage given in whole or in part to improve real estate, * * * the proceeds of which are actually used in such improvement * * * shall be prior to all mechanics', material men's and similar liens."

It follows that if the proceeds of the mortgage were distributed as provided in §8321-1 GC, the mortgagee has priority over the Lewin Lumber Company's mechanic's lien in question.

In the case of **Knollman Lumber Co. v Fred G. Hillenbrand, 64 Oh Ap 549,** in the opinion of the Court it is said:

"When payments are made by the mortgagee to contractors and subcontractors without any certificate by the owner, that payment is required to meet labor pay-rolls, the mortgagee is entitled to priority for all sums actually used in the improvement."

The stipulation and the evidence offered in this case shows conclusively that all of the proceeds of the mortgage in question, to-wit: $7,000.00, were paid out by the attorney for the mortgagee directly to laborers and materialmen, and partly through the mortgagor, the owner of the property.

Our conclusion is that the appellee First Federal Savings & Loan Association of Cincinnati has priority in the proceeds of the sale over the appellant, The A. M. Lewin Lumber Company.

A decree to that effect may be presented here.

MATTHEWS, PJ., concurs in conclusion.

ROSS, J., dissents.

ROSS, J., dissenting:

I cannot concur in the conclusion of the majority of the court that the evidence shows that the entire amount of money paid to Nellie E. Robbins was used in paying off legal claims against the particular building covered by the mortgage upon which the Loan Association depends for its priority.

It does appear that part of this money was used to further the construction of the building, but it also appears that Nellie E. Robbins received $2586.89, which is wholly unaccounted for. Mrs. Robbins stated:

"Judge Ross: Did you spend any part of that money for anything else?

The Witness: You mean personally?

Judge Ross: Yes.

The Witness: No, sir, I never got anything out of any of that money.

Q. You don't know which houses this money was used for do you? You don't know what jobs the money was paid out on?

A. Well, there were a few houses going at the same time.

Q. There were three, weren't there?

A. I believe there were three.

Q. You don't know which jobs this money went to?

A. No.

Q. You did not keep track of it?

A. What do you mean, I didn't keep track of it?

Q. You didn't have any record?

A. No, I didn't have any books."

In the trial court, which evidence is before this court by stipulation, Mrs. Robbins stated:

"Q. You don't know where that money went or to whom?

A. Yes, I stated to pay bills.

Q. To who?

A. For small bills, people who worked on the job, carpenters, laborers.

Q. Can you name one who got the money?

A. I couldn't. You will have to ask Mr. Robbins."

And, again:

"Q. Did you have charge of the books on these jobs?

A. No.

Q. Who took care of the books?

A. We didn't have books, but Mr. Robbins took care of bills and all that.

Q. Did he have a separate account for each job?

A. You will have to ask him that; I don't know."

It is obvious that the witness does not know whether the money she received was used for the buildings covered by the mortgage or not. All she does know is that she personally did not use it for her own purposes.

Sec. 8323-8 GC, provides:

"This act (§§8310 to 8323-10 GC) is hereby declared to be a remedial statute and to be construed liberally to secure the beneficial results, intents, and purposes thereof; and a substantial compliance with its several provisions shall be sufficient for the validity of the lien or liens hereinbefore provided

for and to give jurisdiction to the court to enforce the same."

There appears to be no question in this case as to the perfection of the Lumber Company's lien. Therefore, the case of **Constance & Sons v Lay et, 122 Oh St 468,** has no application.

It does not seem unreasonable, in view of the priority extended to construction mortgages, that those seeking such priority should comply with both the letter and spirit of the statutes securing such priority. Certainly, it does not seem to be placing an unreasonable burden upon the mortgagee to require that it be both alleged and proved that the consideration for the mortgage was used to pay for material or labor used in the construction of the building covered by the mortgage.

Some reliance is placed upon a paragraph of §8321-1, reading as follows:

"The mortgagee shall not be responsible for a mistake of the owner in determining priorities, or for any failure of the payee to properly distribute funds paid on the written order of the owner."

What is meant by the statement that the "mortgagee shall not be responsible for", is to say the least ambiguous when considering priorities involving the mortgagee and other lien holders, whose liens are secured by statutes of equal dignity with that of §8321-1. The instant controversy does not involve a dispute between the mortgagor and mortgagee. Possibly in such a situation, the paragraph quoted might have application. It can have no application in depriving a lien holder of a lien which is secured by the statutes of Ohio, which have not been directly or inferentially repealed.

Such being the case, it is my opinion that the mortgage should be postponed in priority to the extent of the money received by Mrs. Robbins ($2,586.89), and which she is unable to state was used, as is required by the statute, in the construction of the buildings.